**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TRU–LINE METAL PRODUCTS COMPANY and Tru-Line Screw Products, Incorporated, Respondent.**

**No. 15194.**

United States Court of Appeals Sixth Circuit.

Nov. 26, 1963.

Peter M. Giesey, N.L.R.B., Washington, D. C., Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Allison W. Brown, Jr., Attorney, N.L.R.B., Washington, D. C., for petitioner.

Robert M. Myers, Detroit, Mich., for respondent.

Before CECIL, Chief Judge, and O'SULLIVAN and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

The National Labor Relations Board has filed a petition seeking enforcement of an order directing respondent to cease and desist from certain unfair labor practices, to reinstate two employees, and to post the customary notice. It is not disputed that the two respondent companies constitute a single employer within the meaning of the Act.

The Board overruled the trial examiner, who had dismissed the complaint on the basis that there were no violations of the Act. The Board did not disagree with the findings of fact, but rather drew different inferences from the facts as found by the examiner. This of course the Board was free to do. N. L. R. B. v. Wooster Division of Borg-Warner Corp., 236 F.2d 898, 907 (C.A. 6). When the trial examiner and the Board disagree, this Court will examine the evidence with greater care. Burke Golf Equipment Co. v. N. L. R. B., 284 F.2d 943, 944 (C.A. 6); Amalgamated Meat Cutters etc. v. N. L. R. B., 276 F.2d 34, 36 (C.A. 1). The standard, however, continues to be whether substantial evidence supports the findings of the Board. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456; Amalgamated Meat Cutters, etc. v. N. L. R. B., supra.

The Board found that respondent violated § 8(a) (3) and (1), 29 U.S.C. § 158(a) (3) and (1), by discriminatorily discharging two employees for their union activities. It appears that these two employees were released without no-

tice a day or two after they began their organizational efforts. There is no direct evidence that respondent knew of the activities of these particular employees, and the president denied having any such knowledge. He did know, however, that there was some union activity in the plant, and it is clearly established that there was a close conjunction in time between the union activity and the discharge of these two employees. N. L. R. B. v. Wayne W. Wilson Co., 311 F.2d 1 (C.A.6).

The Board found that these two employees were the chief protagonists of the union; that their activities among their fellow employees were extensive and unconcealed; that the plant was small and had only thirty-six employees, with about thirteen on the day shift constituting the largest group working at any one time; that the two discharged persons were among respondents' most highly qualified employees; that one of the discharged employees had the greatest seniority, was the highest paid, and was the most versatile of all the female employees; that the other discharged employee had greater seniority than many others and had been granted two recent increases in wages; that the two employees were discharged suddenly, without any previous warning or reprimand for unsatisfactory work or conduct; and that, while respondent undertook to justify the discharges upon the ground of lack of work, the workload in fact had increased about that time, requiring more overtime work.

■ We find that the Board was justified in concluding from these circumstances that these two employees were discharged discriminatorily because of their activities in support of the union. It is settled law that the credibility of witnesses and reasonable inferences to be drawn from the evidence are matters for determination by the Board. United Fireworks Mfg. Co. v. N. L. R. B., 252 F.2d 428, 430 (C.A.6).

■ The Board further found that on one occasion respondent's president, while leaving the plant, saw a union representative and followed him in his car. When the union official stopped and tried to meet with employees, the president drove past the group a number of times. Respondent contends that these actions were motivated by a desire to satisfy an aroused curiosity, but we cannot say that the Board was incorrect in concluding that these facts constituted surveillance of union activity in violation of § 8(a) (1), 29 U.S.C. § 158(a) (1). See N. L. R. B. v. Hunter Engineering Co., 215 F. 2d 916, 918 (C.A.8).

■ The Board also found a violation of § 8(a) (1) in a statement by a supervisor to an employee that "[I]f the Union gets in the company has to fold up." Such a remark must be viewed in the context of a union campaign. As this Court has said: "[S]tatements on the part of management to employees that it might be necessary to close the plant, made during a period when unionization of its employees was sought to be effected, must be regarded as coercive, notwithstanding sincere belief that such result would follow." United Fireworks Mfg. Co. v. N. L. R. B., 252 F.2d 428, 430 (C.A.6). Thus the Board could reasonably find that the statement in the instant case was coercive and a violation of § 8(a) (1), 29 U.S.C. § 158(a) (1).

We conclude that the findings of the Board are supported by substantial evidence on the record and that the order is appropriate in light of these findings.

A decree will be entered enforcing the order of the Board.