NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

TENNESSEE PACKERS, INC., FROSTY MORN DIVISION, Respondent.

No. 15751.

United States Court of Appeals Sixth Circuit.

Dec. 18, 1964.

Theodore J. Martineau, N.L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Allison W. Brown, Jr., Attorney, N.L.R.B., Washington, D. C., for petitioner.

George V. Gardner, Washington, D. C., Frederick F. Holroyd, Charleston, W. Va., Gardner, Gandal & Holroyd, Washington, D. C., on brief, for respondent.

Before MILLER and O'SULLIVAN, Circuit Judges, and McALLISTER, Senior Circuit Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

In this unfair labor practices proceeding the National Labor Relations Board found that the respondent interfered with its employee Lane's rights under the Act by interrogating her about her union membership, that it forced another employee, Hutchinson, to quit her employment by deliberately making her working conditions intolerable, and that it discharged employee Warren because of her union activities, in violation of Sections 8(a) (3) and (1) of the National Labor Relations Act. Its order directed respondent to cease and desist from the unfair labor practices found and to offer employees Hutchinson and Warren reinstatement, to reimburse them for monetary losses suffered as a result of the discrimination against them, and to post appropriate notices.

The Board seeks enforcement of its order.

■ With respect to employees Lane and Warren, we are of the opinion that the findings of the Board are supported by substantial evidence on the record considered as a whole, including the reasonable inferences to be drawn therefrom. N. L. R. B. v. Ford, 170 F. 2d 735, 738, 739, C.A. 6th; United Fireworks Mfg. Co. v. N. L. R. B., 252 F.2d 428, C.A. 6th. Although we may not be in complete agreement with them, they are nevertheless approved.

The case of employee Hutchinson presents the question of a constructive discharge. Respondent contends that Hutchinson was not discharged, but voluntarily quit her employment. The evidence shows that following the representation election, which the Union lost by a close vote, and in which Hutchinson actively supported the Union, much to the surprise and shock of respondent management, Supervisor Cipriano became very critical of Hutchinson's work, reprimanded her on several occasions, and on one occasion took out "a little black Book," said he was keeping a record of it, and that he was warning her twice but would not warn her a third time. Hutchinson's immediate supervisor, Stuart, who the Examiner found was a supervisor within the meaning of the Act, told Hutchinson "to go ahead and quit," that Cipriano had discovered two errors made by her, and that if he found the third one she "was as good as gone." Stuart added that Cipriano had instructed him "not to even speak to" Hutchinson, and to "make it as hard as possible" on her so she would quit. The following day Cipriano reprimanded Hutchinson for faulty work, to which Hutchinson answered, "Well, I'll just pull my card and quit." Cipriano responded, "If that's the way you feel, pull it." Hutchinson thereupon left the respondent's employ and did not return. The separation slip given Hutchinson indicates that she voluntarily quit and gives as the reason "Because dissatisfied with her job." Hutchinson applied to the Tennessee Department of Employment Security for unemployment benefits. That body ruled: "Evidence indicates claimant quit because she was dissatisfied with her work."

■ On the issue here involved we consider this ruling of the Tennessee Department immaterial, in that we do not know how much of the relevant evidence was before the Department, and, in any event, a finding of fact by the Department is in no way controlling on this Court in our independent determination of the same factual issue.

The Trial Examiner rejected respondent's defense that Hutchinson quit voluntarily, and found instead that the respondent deliberately made her working conditions intolerable and drove her into "an involuntary quit," which he found was a constructive discharge. The Board adopted this finding and conclusion of the Trial Examiner.

■ In our opinion, this finding and conclusion is supported by substantial evidence on the record considered as a whole. It is a well recognized rule in

labor relations law that "a man is held to intend the foreseeable consequences of his conduct." Radio Officers' Union, etc. v. N. L. R. B., 347 U.S. 17, 45, 74 S.Ct. 323, 338, 98 L.Ed. 455; N. L. R. B. v. Oklahoma City General Drivers, etc., 235 F.2d 105, 107, C.A. 10th. Such a constructive discharge is a violation of Section 8(a) (3) of the Act, Section 158 (a) (3), Title 29 United States Code. N. L. R. B. v. Saxe-Glassman Shoe Corp., 201 F.2d 238, 243, C.A. 1st; Bausch & Lomb Optical Co. v. N. L. R. B., 217 F.2d 575, 577, C.A. 2nd; N. L. R. B. v. East Texas Motor Freight Lines, 140 F.2d 404, 405, C.A. 5th; N. L. R. B. v. United States Air Conditioning, Corp., 336 F.2d 275, C.A. 6th.

Decree of enforcement to be entered.